14750

BLANKENSHIP *ET AL.* *v.* ZIMMERMAN *ET AL.*
ZIMMERMAN *v.* CENTRAL UNION BANK OF SOUTH CAROLINA *ET AL.*

(199 S. E., 527)

414

*Messrs. Melton & Belser* and *Irvine F. Belser,* for appellants,

*Messrs. W. B. Wilson, J. M. Blackmon* and *C. T. Graydon,* for respondents,

September 22, 1938.

The opinion of the Court was delivered by MR. A. L. GASTON, Acting Associate Justice.

This action was commenced about June 21, 1934, for the purpose of recovering a preference of $10,000.00 out of the assets of the insolvent Central Union Bank of South Carolina, now in the hands of the appellants as Conservators-Receivers.

In the complaint it was alleged in effect that the Central Union Bank, which had been appointed executor of the estate of the Rev. J. B. Swann, had unlawfully, knowingly and fraudulently mishandled $10,000.00 of the estate funds as set forth in the complaint and hence that the Bank had become a trustee *ex maleficio* of the said fund, and that the plaintiffs as beneficiaries of the estate were entitled to a preference in said amount.

In February, 1935, the defendants-appellants filed a demurrer to the complaint which was overruled by order of Judge J. Henry Johnson, dated March 7, 1935.

Thereafter about April 6, 1935, defendants-appellants filed an answer and return denying generally that the plaintiffs were entitled to any preference. At the same time the defendants filed a motion to dismiss the complaint and to require the plaintiffs to elect, and from an order overruling this motion an appeal was taken to the Supreme Court of South Carolina, 179 S. C., 171, 183 S. E., 760, said order being affirmed on appeal.

The case was heard by Judge Bellinger on May 10, 1937, upon the merits upon the issues made by the pleadings.

It was also established at the trial that approximately $1,-819.09 had been paid by way of dividends on the $10,000.00 participation certificate and that the plaintiffs' claim was thereby reduced to the principal amount of $8,180.91.

Judge Bellinger handed down his decree on July 29, 1937, finding generally in favor of the plaintiffs.

This is an appeal from Judge Bellinger's decree of July 29, 1937, and also from Judge Johnson's order of March 7, 1935.

The principal questions involved on this appeal are:

1. That the investment by the Central Union Bank as executor of the estate of Rev. J. B. Swann of $10,000.00 of the estate funds, of which $5,542.60 were already in the Bank on deposit, in a participation certificate in a pool secured by first mortgages on real estate, some of which have as yet proved to be uncollectible, was not such a breach of trust as to constitute the bank a trustee *ex maleficio* so as to entitle the beneficiaries of the estate to a preference out of the assets of the insolvent bank as to the balance of $8,-180.91, remaining unpaid on such investment;

2. That even if the claim for a preference should be allowed, no interest thereon is recoverable in view of the insolvency of the bank.

The record on appeal is lengthy. The final decree of Judge Bellinger fully and carefully disposes of the issues of law and facts. The decision of this Court on the first appeal settled the legal issue, in favor of the plaintiffs and held that if the evidence on the trial sustains the allegations of the complaint, then the plaintiffs would be entitled to have established in their behalf a trust *ex maleficio* upon the assets of the bank, which would entitle them to a preference. His Honor Judge Bellinger has decided the facts in plaintiff's favor and decreed that the evidence fully sustains the allegations of the complaint.

The legal phase of the case is not open to serious question now in the light of the first appeal involving the same propositions of law. It is like threshing old straw, but if any grains of wheat can be found amidst the chaff, which escaped the winnowing of the first appeal and the circuit decrees or if anything of value can be found to benefit the appellant, the result will well reward the effort to do so, and the labor exerted will be its own recompense.

The complaint is set forth in full in the record on the first appeal, 179 S. C., 171, 183 S. E., 760. The defense set forth in the answer also appear in the record on the first appeal, as well as the contents of the orders by the Circuit Court, and the history of the case.

J. B. Swann, who was a minister of the gospel, died on the 20th April, 1932, and by his will constituted the Central Union Bank of South Carolina the executor. The will was admitted to probate on 25th April, 1932. The Central Union Bank held some of the assets in cash after duly qualifying; the cash on hand and in banks amounted to $12,039.75.

The will bequeathed the residue of the estate to J. S. Blankenship, May Blankenship and Mrs. R. F. Bankhead, all of whom are plaintiffs in this suit. The executor paid the debts of testator and invested $10,000.00 of the cash assets in a pool of investments and a participation certificate, issued to the estate, for its share in a fund at the time, amounting to about $400,000.00 in securities held by the trust department of the bank, against which various participation certificates were issued for the same total sum. The estate also had some stocks which were kept separate. This pool embraced funds held by the trust department of the bank for investment in behalf of private trusts, and also funds held by it under orders of Court as guardian, executor, etc. Shortly after this was done the previous pool was broken up into two pools and the $10,000.00 belonging to the J. B. Swann estate put in a group, known as the Court Trust Pool of about $70,000.00. A new certificate was issued, dated August 8, 1932. The bank closed March 4, 1933, never to re-open.

At the time that the first certificate was issued the bank cancelled two outstanding certificates, to wit, $5,000.00 owned by the commercial department of the bank and $5,000.00 held by the bank as Receiver of the Citizens Bank and Trust Company. A Scrutiny of this transaction shows that the bank as executor did not loan out the

funds of the J. B. Swann estate as a new or separate investment amply secured by a first mortgage on real estate, payable absolutely and alone to the estate, or to the executor. No separate and distinct security was earmarked for the estate. Yet at the moment that the funds came into the custody of the bank in cash as assets of the estate, and were invested no creditors, depositors or other clients of the bank had the remotest right to an iota of claim thereto. The bank as executor was under the legal duty to invest the money safely, and not to mix it with other funds. On the contrary the bank converted the funds into a gigantic pool of doubtful values, mixed the cash funds with other funds held by it, so that its identity was lost, its value jeopardized, and its future collection entrusted to the hazard of a mass of securities some of which were of doubtful value, some were past due and not paid and all of them were pledged in participation with other certificate holders. Not only so but the bank actually advanced its own self-interest by using the cash funds to liquidate or cancel its own certificate, and thus to use the proceeds in its checking account, and to pay off the creditors of the receivership account. All of this was contrary to the duty of the bank as executor to exercise due diligence to keep the estate funds safe and liquid for a final settlement at the end of the administration year, it was in derogation of the rights of the legatees under the will, unjustly augmented the bank's other accounts and actually resulted in paying out the cash to other clients, instead of for a new investment. The bank dealt only with itself, its alter ego got the money. It is not necessary to trace further the tortuous, sinuous course followed in regard to the pools or the mortgage securities.

The first step was wrongful and the final result was ruin and disaster. Appellants contend that some of the real estate mortgage securities have as yet proved to be uncollectible, but were believed to be good by the bank and that no man can be held guilty of actual fraud for dealing with another's property only as he deals with his own.

But it is also uncontrovertible that no man can deal with another's property as his own without the owner's knowledge or consent and thereby dissipate it. Appellants say it may have been negligence or a technical violation of law, but it could not have been actual fraud or bad faith amounting to a theft. While it is hard to use the short and ugly word of thief, as applied to ordinary business transactions, and repugnant to a refined sense of propriety and delicacy of feeling to do so, yet the Courts cannot shield under a mantle of charity, or a super-refined sophistry of reasoning, illegal acts which result in defrauding the owner of his property, without justification or excuse. On the civil side of the Court such transactions come within the doctrine of trust *ex maleficio*. Appellants say that such doctrine must, or should be confined to cases where the bank acquired possession of the funds or property without acquiring the legal title thereto, by fraudulent misappropriation, and that the bank already had $5,542.60 of the money on deposit, and was the legal executor to hold all of it. But this argument overlooks the moral and legal duty to invest the money as executor for the estate and the legatees, and seeks to vindicate a conversion of the funds to a use contrary to the trust imposed, for the ultimate benefit, enrichment and augmentation of the funds of the bank to be used to pay creditors or depositors, and not to be used to make new and independent loans or investments. A man may lawfully receive trust funds, but he cannot lawfully pay his own debts with them, by the simple process of selling his own old securities to the estate. He cannot later claim that he did not realize or know what he was doing, nor show that he was unconscious of the fact that the old securities were not good or were only partially bad, and that his own money was already used to acquire the securities which he sought to dispose of in this manner.

Appellants further contend that the plaintiffs should not be allowed a preference over general creditors, and that to do so would pave the way for such trust estates to take a large and unfair share of the assets of the bank to the great

prejudice of the depositors, who are equally entitled to the protection of the Court, and would do violence to the principle that the assets of an insolvent bank are to be equally distributed. In the first place it must be remembered that the estate funds were entitled in the first instance to a preference and to be secured by the proceeds of their investment in ample securities of the borrower to be held separately and intact by the bank. The trust funds were never the property of the bank to be used for the benefit of depositors; and only by a wrongful conversion are they now so claimed. The Court is asked to augment the funds due creditors by taking the trust estate away from the rightful owners and forcing them to prorate with unsecured depositors who never had the right to a preference. The fallacy of the reasoning of the appellants becomes self-evident and convincing when it is apparent that if followed to its logical conclusion the result will be to deprive by judicial deductions the plaintiffs of the trust funds to which under the will and the law they are entitled and to uphold the rape of these funds now when the Court would have refused to permit the alleged investment as contrary to law, at the time it was made. Certainly the Court will not now sanction acts and conduct which could not be held legal when committed.

It is proper to say that no unjust censure of the personal integrity of the officials of the bank is involved or intended, and it is not necessary to impugn their motives in any manner whatsoever. *Hampton Company v. Lightsey, Receiver*, 164 S. C., 63, at page 74, 161 S. E., 879.

All of the exceptions have been carefully considered and passed upon. Appellants have argued their exceptions under two heads and the first ground cannot be sustained, but is overruled. The circuit decree must be sustained holding that the Receivers be required, from the funds in their hands of the Central Union Bank, to pay to the plaintiffs $8,180.91 as a preferred claim by reason of the trust established *ex maleficio*. Judgment for the plaintiff for the said sum is sustained.

The second ground of the appeal contends that no interest should be allowed, the bank being an insolvent institution. The respondents claim interest before judgment on the ground that the funds were interest bearing in the hands of the bank before the Receivers were appointed and should continue to draw interest until paid, even after insolvency. The evidence shows that $401.61 was credited to the estate as interest to December 3, 1932, which if not paid over, is included in the total amount for which judgment is rendered. At least the evidence fails to show anything to the contrary, and no exception is made thereto. The circuit decree allowed interest from April 28, 1933. The bank closed March 4, 1933, and was insolvent. The investment by the bank was illegal and, therefore, the fund was not an interest-bearing one at the time of the bank's failure to reopen. Certainly no interest-bearing securities belong now to the estate. Under all of the authorities no interest can be allowed prior to judgment upon the trust fund where the bank is an insolvent institution in the hands of a Receiver, under administration of its assets. *Ex parte Hernlen,* 156 S. C., 181, 153 S. E., 133, 69 A. L. R., 443; *Wilson v. Bank of Camden,* 180 S. C., 359, 185 S. E., 617.

Therefore, no interest before judgment can be recovered by the plaintiffs herein, and the judgment below is hereby modified to this extent.

Judgment as modified is sustained and affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Fishburne concur.

Mr. Justice Baker concurs in result.

Mr. Justice Carter did not participate on account of illness.